UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JOHNNY GOULD,<br><br>　　　　　Defendant. | 4:19-CR-40017-01-KES<br><br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Johnny Gould, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 56. Plaintiff, the United States of America, opposes the motion. Docket 64. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On November 25, 2019, Gould pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 36, 42. On February 24, 2020, the court sentenced Gould to 72 months in custody and three years of supervised release. Docket 54; Docket 55 at 2-3. His anticipated release date is December 24, 2023. Docket 58 at 174.

Gould is incarcerated at the Federal Correctional Institution La Tuna (FCI La Tuna), a low security federal correctional institution, in Anthony, Texas. Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last visited Mar. 8, 2021). The total population at FCI La Tuna is currently 835 persons. https://www.bop.gov/locations/institutions/lat/ (last visited Mar. 8, 2021). As of March 8, 2021, there is one active COVID-19 case among inmates at FCI La Tuna. *BOP: COVID-19 Update,* https://www.bop.gov/coronavirus/ (last visited

Mar. 8, 2021). There have been two inmate deaths from COVID-19, and 494 inmates and 68 staff have recovered from COVID-19 at FCI La Tuna. *Id.* Assuming a static population, this means almost 60% of the inmates at FCI La Tuna have contracted COVID-19, but less than 0.3% have died.

Gould is 45 years old. *See* https://www.bop.gov/inmateloc. Gould alleges he suffers from stage three hypertension, hypertensive chronic kidney disease, and left bundle branch block. Docket 56 at 3-4; Docket 61 at 1-2. Gould, through his counsel, requests the court consider the burden to his family from his absence, his medical conditions, and the COVID-19 pandemic together when considering compassionate release. Docket 61 at 11.

Gould completed an Inmate Request to Staff form, requesting he be considered for compassionate release due to COVID-19. Docket 58 at 167-168. On November 5, 2020, the warden denied Gould's request. *Id.* at 166. Gould's appeal of the denial is currently pending. *Id.* at 177. On January 11, 2021, Gould filed a pro se motion with the court for relief under the First Step Act. Docket 56. Gould's counsel subsequently filed a supplement to his pro se motion. Docket 61.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate

2

release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and the defendant must not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Gould argues that the global COVID-19 crisis along with his health conditions and the burden on his family satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 56 at 3-5; Docket 61 at 3-11.

I.   **Administrative Exhaustion**

Previously, only the Director of the Bureau of Prisons (BOP) had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress now permits courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Gould submitted a request for compassionate release due to COVID-19, which was denied by the warden of his facility. Hearing no objection from the United States, the court will presume Gould has satisfied the administrative exhaustion requirement and review the matter on the merits.[1]

## II.   Extraordinary and Compelling Reasons

Though section 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion "the criteria to be applied and a list of specific examples." *Id*. As directed, the Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP Director. USSG § 1B1.13, cmt. n.1(D).

The Sentencing Commission's guidance in § 1B1.13 was provided prior to the passage of the FSA amending section 3582(c)(1)(A) and has not been

---

[1] The warden's response states that if Gould is not satisfied with the decision, he may commence an appeal through the administrative remedy process within 20 days of the response. Docket 58 at 166. That process has not concluded.

4

updated because the commission lacks a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, a number of district courts, including this one, have questioned whether the previous policy statement still applies. *See United States v. Rodd*, Criminal No. 13-230, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 4:05-CR-00227-1, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020); *United States v. Poole*, 4:15-CR-40099-KES, 2020 WL 4673329, at *2 (D.S.D. Aug. 12, 2020).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon,* 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *Beck*, 425 F. Supp. 3d at 578-80; *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Loggins,* 966 F.3d 891, 892 (8th Cir. 2020) ("We need not decide whether the statute supersedes the policy statement in this respect . . . ."); *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13.").

The court has assumed the policy statements still apply to

compassionate release motions brought under the FSA and utilizes USSG § 1B.13, comment notes 1(A)-(D) to guide its analysis. *See, e.g., United States v. Dressen,* 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) *summarily aff'd* (8th Cir. Oct. 9, 2020); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon,* 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020).

Gould contends the ongoing COVID-19 pandemic in combination with his health conditions and family circumstances satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 56 at 2-4; Docket 61 at 3-11. Gould contends his circumstances warrant relief under the medical conditions category, USSG § 1B1.13 comment note 1(A), the family circumstances category, USSG § 1B1.13 comment note 1(C), and the catch-all provision, USSG § 1B1.13 comment note 1(D). Docket 61 at 3-11.

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Gould has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A. Medical Conditions Category, Note 1(A)

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) has identified the following conditions as ones that *do* pose an increased

6

risk of severe illness from COVID-19, including cancer, chronic kidney disease, chronic obstructive pulmonary disease, heart conditions, obesity (a BMI of 30 or higher), type 2 diabetes, and several others. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Feb. 22, 2021). The CDC advises that other medical conditions *might* pose an increased risk of severe illness from COVID-19, including moderate to severe asthma, cystic fibrosis, hypertension or high blood pressure, liver disease, type 1 diabetes, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Gould's medical conditions include hypertension, hypertensive chronic kidney disease, unspecified chest pain with left bundle branch block (LBBB),[2] stimulant related disorder,[3] and several others. Docket 58 at 1, 3-4, 12-13, 19. The CDC recognizes chronic kidney disease as a medical condition that places individuals at an increased risk of severe illness from COVID-19. Gould's medical records also demonstrate a history of hypertension, which is a condition that *might* put him at additional risk from COVID-19. *Id.* at 1, 12. Finally, his medical records reference a heart condition, LBBB, which is also

---

[2] LBBB is a condition involving delay or blockage on the pathway that sends electrical impulses either to the left or the right side of the bottom chambers (ventricles) of the heart. *See* Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/bundle-branch-block/symptoms-causes/syc-20370514 (last visited Mar. 8, 2021). Bundle branch block may or may not require treatment. *Id.* On January 5, 2021, Gould was approved for an echocardiogram to evaluate his left ventricle function. Docket 58 at 4. The results of that testing are not available to the court.
[3] Gould's stimulant related disorder is not among those identified by the CDC as increasing or potentially increasing the risk of severe illness from COVID-19.

7

likely related to Gould's hypertension, and may increase his risk from COVID-19 as well. *Id.* at 1, 19, 23. Gould's prescription regimen includes amlodipine and hydrochlorothiazide for hypertension and losartan for chest pain. *Id.* at 15, 21, 43.

The combination of medical conditions impacting Gould's kidneys, blood pressure, and heart presents a better case than most for consideration of compassionate release. However, much still remains unknown about the exact nature and severity of Gould's conditions. His medical providers have ordered diagnostic tests and further medical work-up. He has been prescribed medication and has routine checkups to manage his hypertension. At this point, it is not certain that Gould's conditions are unmanageable in the custodial setting. Consequently, the court cannot conclude that Gould's medical conditions present "extraordinary and compelling" reasons justifying early release at this time. *See United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation omitted).

Against Gould's medical conditions, the court must weigh the steps the BOP has undertaken to manage the spread of COVID-19 within the facilities and to treat inmates who become infected. The court is familiar with the modified operations plan implemented by the BOP. *See BOP: COVID-19 Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Mar. 8, 2021). Visitation has been temporarily suspended at FCI La Tuna to reduce the spread of COVID-19. *See* https://www.bop.gov/locations/

institutions/lat/ (last visited Mar. 8, 2021). Though COVID-19 has been widespread through FCI La Tuna, it has not been devastating. The inmates who contracted the virus at FCI La Tuna have overwhelmingly recovered. Gould has been among those who have avoided COVID-19. Docket 58 at 17. His medical records state "inmate has been tested multiple times in the last month, all negative results." *Id.*

Recently, the BOP has implemented a COVID-19 vaccination plan and has begun administering vaccines to inmates and staff. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Mar. 8, 2021). As of March 8, 2021, 71,919 doses have been administered systemwide. *Id.* The BOP indicates those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

*Learn More About Vaccinations and View Individual Facility Stats*, https://www.bop.gov/coronavirus/ (last visited Mar. 8, 2021).

The culmination of this information leads the court to believe Gould's medical conditions are appropriately managed at FCI La Tuna, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. Gould's health concerns are understandable; however, his medical conditions coupled with the present conditions at FCI La Tuna, do not presently establish

9

extraordinary and compelling reasons warranting his early release.

### B.   Family Circumstances Category, Note 1(C)

To justify compassionate release under the family circumstances category, USSG § 1B1.13 comment note 1(C), the defendant must demonstrate one of the following: (1) the death or incapacitation of the caregiver of the defendant's minor children or (2) the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Gould advises the court his family is deeply burdened by his absence while incarcerated. Docket 61 at 11. This is a burden faced by most families when a family member is incarcerated. Even if the court were to consider his family circumstances unique, Note (1)(C) specifically references care needed for minor children or an incapacitated spouse. *See* USSG § 1B1.13, cmt. n.1(C). Gould has not demonstrated either of these circumstances. Docket 56; Docket 61 at 11. Though the court is not unsympathetic, Gould does not qualify for release under the family circumstances category.

### C.   Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Even after considering the ongoing COVID-19 pandemic combined with Gould's medical conditions and family circumstances, the court is not convinced extraordinary and compelling reasons exist to release Gould from custody early.

10

### III.   Sentencing Factors of § 3553(a)

The court also concludes the 3553(a) factors weigh against a sentence reduction.

Gould's conviction stems from a conspiracy to distribute controlled substances. At least 13.4 kilograms of methamphetamine were attributable to his conduct. Docket 49 ¶ 16. While living in Arizona, Gould enlisted others to transport narcotics to the Sioux Falls area. *Id.* ¶¶ 9-10. On occasion, his co-conspirator travelled to Arizona and Nebraska where Gould provided him with methamphetamine and cocaine to distribute. *Id.* ¶¶ 9, 13. More frequently, Gould paid women to transport methamphetamine to South Dakota and Iowa. *Id.* ¶¶ 10-12, 14-15.

The total offense level for Gould's conduct was calculated at 29, and he fell into criminal history category I. *Id.* ¶¶ 31, 50. The resulting guideline range for his sentence was 87 to 108 months in custody. *Id.* ¶¶ 76-77. The court sentenced Gould below the guideline range to 72 months in custody. Docket 55 at 2.

To date, Gould has served less than 25% of his statutory sentence. Docket 58 at 175. Under his current status in the BOP he is eligible for home detention on June 24, 2023. *Id.* at 174. The court's sentencing decision was made with care, considering the nature of Gould's offense, his history and characteristics, and all the other applicable sentencing factors. The court concludes Gould's sentence to 72 months in custody continues to be appropriate for the seriousness of the offense to which he pleaded guilty.

## CONCLUSION

Gould has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 56) is denied.

Dated March 9, 2021.

>BY THE COURT:
>
>*/s/ Karen E. Schreier*
>KAREN E. SCHREIER
>UNITED STATES DISTRICT JUDGE